In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1212

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH R. HYATT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-CR-42 DRL-MGG — **Damon R. Leichty,** *Judge.*

ARGUED JANUARY 25, 2022 — DECIDED MARCH 14, 2022

Before RIPPLE, WOOD, and JACKSON-AKIWUMI, *Circuit Judges.*

WOOD, *Circuit Judge.* Kenneth Hyatt was charged with several child-pornography offenses—transportation, 18 U.S.C. § 2252(a)(1); receipt, *id.* § 2252(a)(2); and possession, *id.* § 2252(a)(4)(B). He pleaded guilty to the receipt offense. The question before us in this appeal is whether the district court plainly erred when it applied a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for *distribution* of child pornography,

based solely on the fact that he uploaded images to a folder in his Dropbox account yet took no steps to allow any other person to obtain access to that folder. We conclude that such error occurred, and that Hyatt is entitled to resentencing. We therefore vacate the sentence and remand for further proceedings.

**I**

We can be brief with the underlying facts. In 2019, law enforcement officers received a tip from Dropbox, a well-known cloud-storage host, that someone had uploaded child pornography to it. (Dropbox first informed the National Center for Missing and Exploited Children of the suspected upload.) The officers tracked the IP address to Hyatt's home, where they found him. He admitted that he had uploaded the files.

Hyatt was charged with transporting, receiving, and possessing child pornography. Initially, he agreed to plead guilty to the transportation charge in exchange for a below-guideline sentence of 180 months. The district court rejected that plea agreement, however, and so Hyatt returned with a plea of guilty—unaccompanied by any agreement with the prosecutor—to the receiving offense. That time, the court did accept the plea and set the case for sentencing.

The Presentence Investigation Report (PSR) determined that he had a total offense level of 34, using U.S.S.G. § 2G2.2. It reached that determination as follows:

- Base offense (2G2.2(a)(2))                    22
- Pre-pubescent minors (2G2.2(b)(2))     +2
- *Knowing distribution* (2G2.2(b)(3)(F))    +2
- Sadistic, masochistic (2G2.2(b)(4)(A))    +4
- Use of computer  (2G2.2(b)(6))              +2

- 600 or more images (2G2.2(b)(7)(D))    +5

- Acceptance of responsibility (3E1.1(b)) -3

The only explanation the report writer provided for the distribution enhancement was that Hyatt "uploaded 65 files of child pornography on Dropbox." Hyatt had 22 criminal history points, far more than was needed to place him in Criminal History Category VI. This led to an advisory guideline range of 262 to 327 months' imprisonment.

Hyatt did not object to any of these calculations, either in the sentencing memorandum he filed or at the hearing. Instead, he pressed for a below-guideline sentence of 180 months. In so doing, he argued that the court should disregard four of the enhancements: those for sadistic behavior; prepubescent children; using a computer; and 600 or more images. He did not mention the two-level distribution enhancement, despite the fact that the PSR did not explain what evidence, other than Hyatt's upload to Dropbox, supported it. With respect to the four adjustments on which he did focus, his argument was that while they may have been "technically correct" under the Guidelines, they added nothing because they apply to almost everyone charged with child-pornography offenses. He further contended that these enhancements lacked empirical support and that both the Sentencing Commission and the courts have questioned their utility. He concluded that the court, using its authority under 18 U.S.C. § 3553(a), should sentence him as if they did not apply.

The district court was not persuaded by these arguments, and so it sentenced Hyatt to 293 months' imprisonment, a point in the middle of his guideline range. Before announcing the sentence, the court repeated that the distribution

enhancement was based on Hyatt's "uploading 65 images to Dropbox, which is a file-sharing platform." Hyatt then confirmed again that he "ha[d] no objection to the positions taken in the report" and that the court had "calculated the guideline range correctly." In explaining its sentence, the court noted that it had not "been told in this case whether the uploaded materials to Dropbox could be accessed by others. Though, in this era of cloud-based storage, that risk certainly remains." The court also observed that the distribution and computer-usage enhancements partially overlapped because they were based on the same conduct—Hyatt's uploading of images to Dropbox, from whence they *could be* "disseminated at the push of a button." A one-level reduction to reflect the overlap, it noted, would yield an alternative range of 253 to 293 months. The court concluded that a sentence at the top of that range would properly account for the seriousness of Hyatt's behavior and his extensive criminal history.

## II

On appeal, Hyatt argues for the first time that it was error for the court to apply the enhancement provided by U.S.S.G. § 2G2.2(b)(3)(F) for distribution. He makes two key points: first, that the simple act of uploading the files to Dropbox does not meet the Guidelines' definition of distribution, any more than one would "distribute" an item to a safe or a locked file cabinet, at least until someone else obtained access to the safe and removed the item; and second, that the *risk* of distribution falls short of actual distribution, and the court found only the former.

Before we delve into those arguments, we must decide whether Hyatt's failure to raise them in the district court amounted to waiver, or merely forfeiture. If he waived them,

then they are not properly before us; if he forfeited them, we may assess them using the plain-error standard of review. See, *e.g.*, *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020).

Waiver occurs when a party intentionally relinquishes a known right; forfeiture, in contrast, occurs as a result of a negligent failure timely to assert a right. *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned up); *United States v. Robinson*, 964 F.3d 632, 643 (7th Cir. 2020). In order to assess which of those two concepts applies to a given case, we must take all the circumstances into account. One factor that points toward waiver is the existence of "sound strategic reasons" why a defendant might choose to forego an argument in the district court. *Dridi*, 952 F.3d at 898, citing *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847–49 (7th Cir. 2005). Conversely, "we have found forfeiture when the government cannot proffer a plausible strategic justification for a decision not to object." *Dridi*, 952 F.3d at 898.

A mere failure to object to part of a PSR is not enough to support a finding of waiver. *United States v. Hammond*, 996 F.3d 374, 399 (7th Cir. 2021). Even when a defendant repeatedly states that he has no objections to the PSR, as Hyatt did, those statements are not dispositive. *Jaimes-Jaimes*, 406 F.3d at 848. We reaffirmed in *Hammond* that "the waiver principle is construed liberally in favor of the defendant." 996 F.3d at 399.

Hyatt contends that this record does not support a finding of waiver, in part because he did not raise *any* objections to the PSR's calculation of the guideline range, choosing instead to rely on Section 3553(a). That is correct: he did not challenge the factual basis of any of the enhancements we noted earlier, even though he did argue that the policy underlying four of them was flawed and so they should be disregarded in

sentencing. Adding that to the fact that it was not until the court issued its sentence that anyone seriously focused on the *accessibility* of materials in Hyatt's Dropbox account, we conclude that this record does not support a finding of intentional abandonment of the distribution argument. It was forfeited, however, and so we now turn to the question whether the record demonstrates plain error.

The Supreme Court has explained that plain-error review involves four steps:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. … Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. … Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. … Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009). We now examine each of these steps.

We already have addressed the first criterion—whether there was some "error or defect" that was not waived. The alleged error is the application of the enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution, as applied to a situation where the defendant did no more than store those

materials in an inaccessible cloud folder. As just explained, Hyatt forfeited this point; he did not "affirmatively waive" it. The third criterion—effect on substantial rights—is also satisfied. With the two-point enhancement, Hyatt's advisory range was 262 to 327 months; without it, the range would have been 210 to 262 (possibly lower, if the district court on remand were to accept his argument that he is also entitled to the two-level reduction provided by U.S.S.G. § 2G2.2(b)(1)—a contention on which we do not comment). The precise mid-point for the range the court adopted is 294.5 months; he received a sentence of 293. The mid-point of the hypothetical lower range is 236, almost five years less than his actual sentence.

If the court erred by applying the distribution enhancement, this is more than enough to show that the error was prejudicial. That is true even though the Guidelines are only advisory. They nonetheless provide the critical starting point for the district court's analysis. *E.g.*, *Peugh v. United States*, 569 U.S. 530, 536 (2013). Finally, looking at the fourth consideration for plain error, we regularly have found the necessary negative effect on the fairness, integrity, and public reputation of the judiciary when defendants are sentenced based on an incorrect guideline range. See *United States v. Godinez*, 955 F.3d 651, 661 (7th Cir. 2020); *United States v. Garrett*, 528 F.3d 525, 530 (7th Cir. 2008).

The pivotal factor in Hyatt's case is the second—whether there was a clear or obvious legal error. The government argues that there was no error at all, much less one that was clear or obvious. It points to the definition of distribution that applies to U.S.S.G. § 2G2.2:

> "Distribution" means *any act*, including possession with intent to distribute, production, transmission,

advertisement, and transportation, *related to the transfer of material* involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2 cmt. 1, item 2 (emphasis added). Since the list following the words "any act" includes transportation, the government reasons, that means that any act of transportation is, *ipso facto*, an act of distribution. But the definition does not end with the word "transportation." Only an act "related to the *transfer of material*" is covered. The examples following the word "act" are no more than a nonexclusive list of the types of acts that might be involved. Distribution is not present unless and until there is something related to a transfer of material from the defendant to another person.

The government's position to the contrary runs squarely into one of the most basic canons of interpretation: that "every clause and word of a statute should, if possible, be given effect." See *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001) (cleaned up), citing *United States v. Menasche*, 348 U.S. 528, 538–39 (1955), quoting in turn from *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883). This is sometimes referred to as the surplusage canon, which was described as follows by the late Justice Antonin Scalia and Bryan Garner: "If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). As relevant here,

if transportation is, by definition, distribution, then why bother to have two terms at all?

Even if the redundance inherent in such a reading did not dissuade us from adopting it, we must also confront the fact that common usage does not equate the two terms. See *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020) (a statute should be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment"). A person can "transport" an item without distributing it to anyone. Suppose Hyatt puts a thumb drive containing his images of child pornography in his backpack, puts the backpack into his car, and drives from Indiana to Ohio. Once in Ohio, he removes the backpack from the car and checks into a hotel room. He certainly has transported the images, but he has not distributed them to anyone. The same would be true if he had the images on a laptop and then moved the laptop from Town A to Town B. By the same token, it is easy to distribute something to another without personally transporting it. Many companies in today's world operate a central distribution facility to which the customer travels to pick up the item she ordered. In short, the difference between transporting and distributing is indisputable and plain.

What about more modern types of transportation, such as an attachment to an email, or the provision of a link in a text, or the use of a cloud-storage device? We asked the government at oral argument whether it would take the position that Hyatt had "distributed" something if he just sent an email to himself with an attachment containing the images. To our surprise (given the argument about Dropbox), the assistant U.S. attorney responded that email is different, because it is not designed for ready distribution. Really? Anyone who has ever

been bombarded with spam emails, or group text chains, or email ads, would beg to differ. "Reply to all" and "forward" instructions can blanket the world almost instantaneously. The critical question in all of these situations is whether some act related to transfer (*i.e.,* some form of distribution) occurred. It is not enough, under the Guidelines' definition, if the person has done no more than take a step that would make distribution easy at a later time.

We also wondered whether the government was taking the position that the act of moving a file from one's personal computer (or tablet or phone) to a cloud-storage facility such as Dropbox is itself distribution, within the meaning of the Guideline. The answer that time was yes. But that takes us back to the original problem: a person normally does not think she has "distributed" papers to a bank, just because she puts the envelope in her safe-deposit box there, no more than she thinks she has "distributed" her car to a parking lot where it will remain until the opera is over. Those are instances of bailment, where the bailee acts as the bailor's agent, not as an independent third party. We see no reason why the analysis should not be the same if the storage facility is digital.

The problem for the government is, in a nutshell, that as far as this record shows, no one was able to obtain access to anything in the Dropbox folder that Hyatt was using without his active intervention and permission. And no *evidence* indicates that he ever opened it up to anyone. No one doubts that it would have been easy for Hyatt to grant access—as the district court put it, it would have required only "the push of a button." But there is no evidence that the button was ever pushed, and, as we now explain, this gap in the record cannot be laid at Hyatt's feet.

As the party advocating the distribution enhancement, it was the government's burden to show by a preponderance of the evidence that the enhancement was warranted. See *United States v. Hines*, 449 F.3d 808, 815–16 (7th Cir. 2006), citing *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir. 1997). The question is thus what should happen in the light of the way the record developed.

In this court, the government represented in its responsive brief that the search-warrant affidavit authorizing the search of Hyatt's phones stated that he was sending his files to a folder called "Share #2." That got our attention, since such a name suggests at least an intent to distribute, if not actual distribution. But we then learned at oral argument that the affidavit had been sealed throughout the proceedings in the district court and that counsel for Hyatt learned of the "Share #2" folder only when she read the government's appellate brief. The Share #2 folder itself is not in the record, nor is anything else about it (such as, for instance, information about whether it was ever made available to others).

When there is no evidence in a record other than a conclusory statement in a PFR recommending the application of a guideline enhancement, we are hard pressed to say that the government has carried its burden of persuasion. In the present case, this is a problem that uniquely affects the distribution enhancement—the images themselves were proof enough of the four other enhancements that Hyatt wanted the court to discount under section 3553(a): sadistic behavior, prepubescent children, use of a computer, and more than 600 images. But there is not a hint of distribution in the record.

When all is said and done, we find too many problems with this sentence to allow it to stand. Even on plain-error

review, we cannot accept a reading of the term "distribution" in U.S.S.G. § 2G2.2 that equates it with "transportation." As we have explained, that is not what Application Note 1 says. We must find transportation *related to* a transfer from Hyatt to some other person, and there is no such evidence in this record.

It was the government's burden to introduce such evidence. We recognize that, at this late stage, the government is hinting that it could do so. At the very least, it has stated (without record support) that Hyatt was storing his images in a folder labeled "Share #2." But that alone is not enough. Even if the name of the file might support the inference that Hyatt was planning to distribute those files at some point in the future, nothing indicates that he had acted on any such (assumed) intention. We can speculate that Hyatt transferred images to others in the past, but sentences must be based on more than speculation. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). If the government possesses additional evidence to support the enhancement, then on remand the district court has discretion to grant it an opportunity to supplement the record with that evidence. See *United States v. Sumner*, 325 F.3d 884, 888–89 (7th Cir. 2003). If we were to cut off that discretion, then we would be giving Hyatt an affirmative benefit from his forfeiture rather than merely relieving him of the consequences of his failure to preserve the issue. *Id.*

Before concluding, we note that no circuit has accepted the government's position that a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of child pornography applies based solely on the upload of files to cloud-based storage. Several circuits have decided cases where, unlike the

one before us, the record contained evidence that the defendant used Dropbox (or a similar service) to *share* child pornography with others. See *United States v. Hennings*, 23 F.4th 820 (8th Cir. 2022) (distribution enhancement applied where defendant shared files stored on Dropbox with others); *United States v. Saemisch*, 18 F.4th 50, 53 (1st Cir. 2021) (defendant convicted of distributing child pornography where he shared a link to files stored on a cloud-storage service); *United States v. Davis*, 751 F.3d 769, 771 (6th Cir. 2014) (same); see also *United States v. Cox*, 963 F.3d 915, 922 (9th Cir. 2020) (affirming conviction for advertising child pornography where user sent a Dropbox link providing access to child pornography to another individual). At the same time, several circuits have assumed in dicta that the government's position is wrong—that is, merely uploading images to a cloud-storage service is *not* distribution. See *United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020) (distinguishing transportation, which does not require conveyance to another person, from distribution); *In re United States*, 945 F.3d 616, 621 (2d Cir. 2019) (noting, in decision on petition for writ of mandamus, that defendant "did not distribute" a video that he uploaded to his personal Google Photos account, a cloud-based storage service with sharing capabilities).

## III

We conclude that the district court erred when it added two offense levels for knowing distribution of child pornography pursuant to U.S.S.G. § 2G2.2(b)(3)(F). Hyatt did not waive the right to raise this argument on appeal, and the error was both prejudicial to him and of sufficient importance to the judicial system that we should correct it. We therefore VACATE the sentence and REMAND for resentencing. On

remand, both parties will be free to present their positions on the factual basis for the enhancement. The district court will also be free to explore the question whether the deletion of the knowing-distribution enhancement also means that Hyatt is entitled to the two-level reduction in offense level provided by U.S.S.G. § 2G2.2(b)(1).