In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2771

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NAIN GALVAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00031-TWP-RAB-1 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED MAY 18, 2022 — DECIDED AUGUST 16, 2022

Before HAMILTON, BRENNAN and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge*. Appellant Nain Galvan, a citizen of Honduras, was arrested in possession of a handgun after robbing his employer and threatening several people at an apartment complex. He was later charged with and pled guilty to illegally possessing a firearm. At sentencing, the district court applied the guideline provisions for robbery because it found that Galvan used the same handgun in committing a robbery about two hours earlier. Galvan appeals,

arguing that the district court erred in factual findings essential to its application of the Sentencing Guidelines. We affirm.

I.  *Factual and Procedural Background*

Galvan worked part-time for Asencio Gomez in construction near Indianapolis. When necessary, Gomez would occasionally let Galvan and others borrow one of his work vans to assist with a project. On October 21, 2017, Galvan borrowed a van from Gomez because Galvan's own vehicle had broken down. The next day, he drove to Gomez's home to return the vehicle. Galvan gave the keys to Gomez and shared a meal with Gomez and his family. For unknown reasons, Galvan eventually pulled out a handgun, fired several shots, took the keys from Gomez's pocket, and drove away in the van. Gomez immediately called the police and reported a robbery.

Less than two hours later, police received a report of a man with a gun at an apartment complex. Galvan had threatened several men in the complex while brandishing a handgun. When police arrived, they found Galvan leaning on the driver's side of Gomez's stolen van. Police arrested Galvan, and one of the officers found a handgun in the driver's seat. Galvan was later charged with and pled guilty to possessing that handgun as an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5).

At a combined plea and sentencing hearing, the district court first accepted Galvan's guilty plea but then decided that a second hearing was needed to consider evidence relevant to Galvan's sentence. At that time, Galvan faced a pending charge in state court for armed robbery of Gomez's van, but that charge was later dismissed. At the second sentencing

hearing, the district court heard testimony from both Gomez and the detective who investigated the robbery.

The district court then made several findings about how to apply the Sentencing Guidelines to Galvan's case. The court found that the guideline for robbery governed Galvan's firearm-possession offense because he had used the same handgun when he robbed Gomez. See U.S.S.G. §§ 2B3.1(a) & 2K2.1(c)(1)(A). The court also found that Galvan had fired the handgun in connection with the robbery, which increased his offense level by seven. These and other guideline findings raised Galvan's total offense level from 14 to 26. With Criminal History I, Galvan's guideline sentencing range was 63 to 78 months in prison. The district court sentenced Galvan to 70 months in prison and two years of supervised release. Galvan did not file a timely appeal, but he later filed a motion under 28 U.S.C. § 2255 asserting in part that his counsel was ineffective for failing to file a notice of appeal when asked. The district court granted the motion, reissued the judgment, and entered his notice of appeal.

II. *Analysis*

The parties debate whether Galvan waived, forfeited, or properly preserved for appeal the issues he raises. "Waiver occurs when a party intentionally relinquishes a known right; forfeiture, in contrast, occurs as a result of a negligent failure timely to assert a right." *United States v. Hyatt*, 28 F.4th 776, 781 (7th Cir. 2022). If a defendant has "sound strategic reasons" to forgo an argument in the district court, that points toward waiver. *Id.*, quoting *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020). We do not consider waived arguments, but we may assess forfeited arguments for plain error. *Id.*; see also Fed. R. Crim. P. 52(b) ("A plain error that affects substantial

rights may be considered even though it was not brought to the court's attention."). We do not find waiver here, and the outcome of this appeal does not turn on the difference between standards of review for preserved and forfeited issues.

A.  *Determining Galvan's Base Offense Level*

First, Galvan argues that the district court erred in setting the base offense level for his sentence because there was insufficient evidence that he used the same firearm in his federal possession offense and the robbery of Gomez. Galvan was convicted of violating 18 U.S.C. § 922(g)(5), which would ordinarily call for a base offense level of 14. U.S.S.G. § 2K2.1(a)(6). However, the district court applied § 2K2.1(c)(1)(A):

> (c)(1) If the defendant used or possessed any firearm … cited in the offense of conviction in connection with the commission … of another offense[,] … apply—
>
>> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above ….

The guideline for attempt, solicitation, or conspiracy provides that the base offense level should be the "base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." § 2X1.1(a).

Here, applying the cross-reference in § 2K2.1(c)(1)(A), the district court found that the higher offense level of 20 for robbery governed rather than the base offense level of 14 for

possessing a handgun as an alien unlawfully in the United States because Galvan used the firearm from his possession conviction "in connection with" his robbery of Gomez. See §§ 2B3.1(a), 2K2.1(a)(6), & 2K2.1(c)(1)(A). The court also considered specific offense characteristics for Galvan's firearms offense under the robbery guideline based on this cross-reference.[1]

Galvan contends that this cross-reference should not apply because the district court "did not point to specific pieces of evidence giving reason to believe that the same firearm was possessed during Mr. Galvan's [robbery of Gomez]." At best, however, Galvan has forfeited this issue. The government points out that Galvan had a strategic reason not to question whether the same gun was used in the offense of conviction and in his robbery. At sentencing, Galvan admitted to firing *a* gun while at Gomez's home. Any argument that the gun he fired was different from the handgun cited in the offense of conviction would necessarily imply that Galvan violated § 922(g)(5) again with a second firearm that day. This two-gun scenario sounds more like an aggravating factor during sentencing, not a mitigating one.

Even so, we construe waiver principles liberally in the defendant's favor. *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015). Galvan stopped short of expressly admitting during sentencing that the firearm he discharged at Gomez's home was the same handgun found in his vehicle when he

---

[1] We found in *United States v. Jones*, 313 F.3d 1019, 1021–22 (7th Cir. 2002), that the relevant conduct provision at § 1B1.3 governs application of the cross-reference in § 2K2.1(c)(1)(B), the provision for homicide. Galvan has not disputed that the robbery was relevant conduct for his § 922(g)(5) conviction.

was arrested. This issue is best characterized as forfeited by
Galvan's failure to raise it during sentencing, so we review it
for plain error, *Hyatt*, 28 F.4th at 781, but we would reach the
same result if Galvan had preserved the issue. We have dis-
cretion to remedy a plain error at sentencing when: (1) "there
is an error 'that has not been intentionally relinquished or
abandoned'"; (2) "the error is … 'clear or obvious'"; (3) "the
error 'affected the defendant's substantial rights[,]'" i.e., it af-
fected the outcome of the proceedings in the district court;
and (4) "the error 'seriously affects the fairness, integrity or
public reputation of judicial proceedings.'" *United States v.
Hopper*, 934 F.3d 740, 766 (7th Cir. 2019), quoting *Molina-Mar-
tinez v. United States*, 578 U.S. 189, 194 (2016).

Galvan's argument fails at the first step of plain-error anal-
ysis because there was no error. The court needed to find by a
preponderance of the evidence that the handgun cited in Gal-
van's offense of conviction was the same handgun used "in
connection with" the robbery of Gomez. See U.S.S.G.
§ 2K2.1(c)(1)(A); *United States v. Major*, 33 F.4th 370, 379 (7th
Cir. 2022). The court did so.

When discussing the application of the Guidelines during
Galvan's second sentencing hearing, the district court noted
that it "must also consider whether the firearm used was the
same firearm." After describing the events that transpired, the
district court found it more likely than not that all the en-
hancements applied, including the greater offense level re-
sulting from use of the same gun "in connection with" the
robbery. At no point did Galvan object to the finding that the
same firearm was used. He argued instead that the firing of
the gun did not occur in connection with a robbery.

Ample evidence supported the court's finding that the same gun was involved in both episodes. Gomez testified at sentencing that Galvan pulled out and discharged a handgun while at Gomez's home. Less than two hours later, the arresting officer found a handgun in the front seat of the van Galvan had stolen. The district court was justified in finding only one firearm was used, and Galvan never actually suggested otherwise. The district court did not explain this fact determination in detail, but we do not expect district courts to dwell on issues that are not contested at sentencing. E.g., *United States v. Longstreet*, 567 F.3d 911, 928–30 (7th Cir. 2009) (affirming district court's determination of drug quantity attributable to defendant where defendant did not object to drug quantity in PSR or at sentencing hearing). There was no error.

B. *Increasing Galvan's Offense Level Due to a Specific Offense Characteristic*

In the alternative, Galvan maintains that he did not discharge a firearm in connection with a robbery. At sentencing, the district court applied a specific offense characteristic that increased Galvan's offense level by seven after it found "that the defendant discharged the firearm" in connection with his robbery of Gomez. See U.S.S.G. § 2B3.1(b)(2)(A). At sentencing, Galvan objected to the court's application of this guideline provision. His counsel said that Galvan, who still faced a robbery charge in state court and did not testify on the subject, had told him that he brought the handgun to Gomez's house because "Mr. Gomez was thinking about buying it." In counsel's relay of Galvan's account, he "test fired" the handgun in connection with this potential sale. The court rejected that account: "The defendant's version of what happened is not

credible. It's not what Mr. Gomez reported to the police and it's not what Mr. Gomez testified to today."

The basic thrust of Galvan's argument on appeal is the same—no gunshots occurred in connection with a robbery—but with a twist. He contends now that he fired the shots before he formed the intent to commit robbery. Whether he preserved that argument for appeal or not, and thus whether we apply the standard for a preserved issue or for a forfeited one, Galvan loses on the merits. Under the more generous standard, we review for clear error the factual findings that underlie a district court's application of the Sentencing Guidelines. *United States v. Harper*, 766 F.3d 741, 744 (7th Cir. 2014). The district court's factual findings in applying the Guidelines must be supported by a preponderance of the evidence. See *Major*, 33 F.4th at 379. We will disturb those findings only if, upon reviewing the record, "we are left with the definite and firm conviction that a mistake has been made." *United States v. Burnett*, 37 F.4th 1235, 1239 (7th Cir. 2022). The district court reasonably found here that Galvan fired the shots as part of his effort to threaten and intimidate Gomez to give up the keys to the van. There was no clear error.

At the time of the first sentencing hearing, Galvan had charges pending in state court for his armed robbery of Gomez, but his trial date had not been set. The district court wanted to proceed with the federal sentencing promptly, without waiting for the state court to resolve the robbery case. The court decided to hold a second sentencing hearing in part to hear testimony from Gomez so the court could determine whether to apply the specific offense characteristic for discharging a firearm in connection with a robbery under § 2B3.1(b)(2).

Recall that Galvan arrived at Gomez's home to return a borrowed work van and to share a meal with Gomez and his family. Galvan later pulled out a handgun and discharged it four times. Gomez testified that the shots surprised and scared him and his family. He said that he calmly asked Galvan to leave. As Gomez escorted Galvan away, one of Gomez's neighbors came outside. Gomez testified that Galvan then fired the gun two more times before he "turned around and he pointed the gun and he took the keys [to the work van] from my pocket." When asked at sentencing if he was frightened, Gomez responded, "Yes, after that first time when he shot. And then, after the second one, I was fearful and I just stayed behind." As soon as Galvan drove away in the stolen van, Gomez called the police to report the robbery.

Under Indiana law, an armed robbery occurs when a person knowingly or intentionally takes property from another person by using or threatening the use of force on a person while armed with a deadly weapon. See Ind. Code § 35-42-5-1(a). Galvan argues that he fired the shots before he formed the intent to rob Gomez. That defense might be available as a matter of theory, but not as a matter of fact in this appeal after the district court found otherwise on the evidence. Galvan's own hypothetical at oral argument shows how finely he is trying to slice things based on a robber's state of mind:

> The Court: If a bank robber goes into the bank and fires a gun in the air, and then says, "I'm here to rob the bank, everybody get down," does the bank robbery only commence once he says "I'm here to rob the bank, everybody get down," and he didn't actually fire the gun

during the commission of the robbery? That would seem totally absurd to me.

Galvan's Counsel:  Based on your example we would agree. I think the more appropriate hypothetical is that if that bank robber took the gun and fired several shots into the ground, then went into the bank and said, "I'm here to rob the bank," there's a question as to whether the shooting, or the firing of the gun, is in connection with the bank robbery.

The Court:  Well that's, that's a good hypothetical. What if he did it after the robbery? So he commits the robbery, he goes outside, he shoots the gun up in the air a couple of times, everybody hits the ground, right? And he runs away. Would that—would he have shot the gun after the commission of the robbery? Cause again, that, that seems, like, a little absurd to me—I mean maybe it's not?

Galvan's Counsel:  That would be—that would be after the robbery had occurred. I guess we'd have to—

The Court:  See how hard that would be to determine?

Returning from the hypothetical to the facts here, according to Gomez's testimony there was no gap between the second series of shots and the robbery. Gomez testified that Galvan was standing close to him when he fired those shots. Galvan then turned and "pointed the gun and he took the keys." There is no evidence of an intervening action or an interval of

time between the gunshots and the taking of Gomez's keys. This testimony was more than enough to show by a preponderance of the evidence that Galvan discharged a firearm "during" the robbery under Indiana law. See Ind. Code § 35-42-5-1(a); *Gray v. State of Indiana*, 903 N.E.2d 940, 943 (Ind. 2009) ("A conviction for armed robbery may be sustained even if the deadly weapon was not revealed during the robbery."). The district court did not err in adding seven levels under § 2B3.1(b)(2)(A).

The judgment of the district court is

AFFIRMED.