In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 21-2753

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICKIE FOY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cr-00268-2 — **Thomas M. Durkin**, *Judge.*

———————

ARGUED SEPTEMBER 13, 2022 — DECIDED OCTOBER 3, 2022

———————

Before FLAUM, BRENNAN, and SCUDDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. Rickie Foy was among a group of individuals whose attempt to forcibly break into a Chicago ATM during summer daylight hours was recorded by the machine's security camera. After Foy's arrest, federal charges were brought against him, and he was found guilty of conspiracy to commit bank theft in violation of 18 U.S.C. §§ 371 and 2113(b). On appeal, Foy raises three issues: first, that the government was required to show evidence of intent to steal

more than $1,000, rather than just intent to steal; second, that the government fell short of establishing a conspiracy at trial; and third, that the district court impermissibly considered the civil unrest in the wake of George Floyd's death as an aggravating factor in sentencing Foy. For the following reasons, we affirm Foy's conviction and sentence.

## I.    Background

### A.  Factual Background

On June 1, 2020, a group of individuals attempted to steal money from a Bank of America ATM located in an ALDI grocery store parking lot in Chicago, Illinois. The ATM was equipped with a surveillance video camera which captured video, but not audio, from the scene. The footage shows a group of people—including Foy (clad in a neon construction vest) and his co-defendants Pierre Harvey and Chyenne Simpson—surrounding the ATM at approximately 7:10 PM.[1] For roughly the next eight minutes, the group used an assortment of tools, including a hammer, crowbar, and rod, to attempt to break open the ATM and access its contents. The individuals passed these tools among the assembled group, appearing to direct one another on how to utilize them. The group damaged the outside cover of the ATM but ultimately failed to gain access to the cash inside.

At approximately 7:18 PM, Chicago Police Department ("CPD") officers arrived on the scene and arrested Foy, Harvey, and Simpson. According to Bank of America records, the

---

[1] At trial, the parties stipulated that the video timestamps incorrectly reflect one hour earlier than the actual time of the incident.

vandalized ATM held over $190,000 in cash. The FDIC insured Bank of America at the time of the incident.

## B. Procedural Background

In June 2020, a criminal complaint charged Foy with violating 18 U.S.C. § 371 by conspiring to commit an offense against the United States, specifically bank theft in violation of 18 U.S.C. § 2113(b). Section 371—the conspiracy count—provides that:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
>
> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

Section 2113(b)—the federal bank robbery statute—states that:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined

under this title or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than one year, or both.

A grand jury returned a single-count indictment on June 17, 2020, charging Foy with conspiring "to commit an offense against the United States, namely, to take and carry away with the intent to steal money exceeding $1,000 in value belonging to … Bank of America" in violation of §§ 371 and 2113(b). Foy pleaded not guilty at his arraignment on June 23, 2020, and he remained in federal custody through his trial.

In December 2020, Foy waived his right to a jury trial and opted to resolve his case by bench trial. Both parties consented to conducting the trial remotely via videoconference, which was held on February 10, 2021. At the trial, which lasted less than three hours, the government played the ATM's surveillance video. Foy moved for judgment of acquittal at the close of the government's case, arguing that, even taking the evidence in the light most favorable to the government, speculation and guessing were required to determine what was taking place in the silent video footage.

The district court found Foy guilty on February 16, 2021, denying his motion for acquittal. Foy moved for a new trial on March 8, 2021. His arguments included that the

government failed to prove beyond a reasonable doubt that he intended to steal more than $1,000 because "perhaps the defendants, whether acting alone or together would have been satisfied with, and therefore intended to steal[,] less than $1,000," and that the government failed to prove beyond a reasonable doubt that the defendants conspired with each other because they were conceivably "independent actors seeking to achieve the same goal at the same time." The district court rejected Foy's intent argument, reasoning that the intent to steal money or property, as that language appears in § 2113(b), "is not a specific intent to steal property or money exceeding $1,000" and "[t]hus the statute does not require the government to prove beyond a reasonable doubt that Mr. Foy had the specific intent to steal an amount exceeding $1,000, or that he knew how much money was in the ATM." The district court also rejected Foy's association argument, reaffirming that the surveillance footage and still images from the ATM show the defendants working together to tear apart the machine, in part "by sharing crowbars and rods."

Prior to the sentencing hearing, Foy objected to the government's proposed dangerous weapon enhancement and intended loss calculation included in the Presentence Investigation Report ("PSR"). Ultimately, the government did not pursue the dangerous weapon enhancement and the parties agreed to an actual loss calculation equivalent to the cost to replace the ATM, which led to a revised range of thirty to thirty-seven months' imprisonment under the Sentencing Guidelines. On September 10, 2021, the district court sentenced Foy to thirty-seven months' imprisonment, and three years' supervised release, in addition to restitution. Foy now appeals.

## II.    Discussion

Addressing Foy's issues on appeal: first, that the govern-
ment was required to show evidence of intent to steal more
than $1,000, rather than just intent to steal generally; second,
that the government's video evidence fell short of establishing
a conspiracy to commit bank theft; and third, that the district
court impermissibly invoked the ongoing civil unrest in June
2020 as an aggravating factor in his sentencing.

As relevant to the first two issues, Foy moved for a judg-
ment of acquittal under Federal Rule of Criminal Procedure
29, and later for a new trial under Federal Rule of Criminal
Procedure 33. Under Rule 29, after the close of the govern-
ment's case, the court must, on a defendant's motion, "enter
a judgment of acquittal of any offense for which the evidence
is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).
Under Rule 33, "[u]pon the defendant's motion, the court may
vacate any judgment and grant a new trial if the interest of
justice so requires." Fed. R. Crim. P. 33(a). We review the dis-
trict court's denial of a motion for acquittal under Rule 29 de
novo, and the denial of a motion for a new trial under Rule 33
for abuse of discretion. *United States v. Wilbourn*, 799 F.3d 900,
910 (7th Cir. 2015). As relevant to the final issue, any sentenc-
ing challenges that are forfeited, rather than waived, are re-
viewed for plain error. *United States v. Hyatt*, 28 F.4th 776, 782
(7th Cir. 2022). We address each issue in turn.

### A. Required Intent

The first issue presents the question of what intent is re-
quired to satisfy the mens rea element of felony bank theft
conspiracy: intent to steal or intent to steal more than $1,000.
Foy argues that the district court erred in denying his Rule 33

motion for a new trial in part because it held that the government need only show intent to steal. We review this question of statutory interpretation de novo. *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018).

Beginning with the substantive offense underlying Foy's conspiracy conviction, the federal bank robbery statute distinguishes between property or monetary values above and below $1,000:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value *exceeding $1,000* belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; or

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value *not exceeding $1,000* belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 2113(b) (emphasis added). Under the $1,000 value threshold, the violation is classified as a misdemeanor. 18 U.S.C. § 3559(a)(6).

There is no dispute that the record is bereft of evidence that Foy specifically intended to steal more than $1,000. Instead, at trial, the government relied on a stipulation that

there was more than $1,000 in the ATM. Foy argues that the intended amount matters: "[I]f the conspiracy was to steal less than $1,000, the intended underlying bank theft would be a misdemeanor, and a felony conspiracy charge could not stand." The government argues that § 2113(b)'s scienter element only requires an intent to steal, while Foy argues that it requires an intent to steal more than $1,000.

First, we look to the plain language of the statute. *United States v. Sanders*, 909 F.3d 895, 901 (7th Cir. 2018). We are unconvinced by Foy's argument that § 2113(b) involves "a straightforward, parallel construction" and thus the $1,000 valuation modifier "applies to the entire [preceding] series." Unlike other statutes where the relevant modifier has been interpreted to "hang[] together as a unified whole, referring to a single thing," *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018), § 2113(b)'s dollar valuation modifier is separated from the intent language, which is offset by commas. Thus, by declining to read the dollar-amount modifier into the intent clause, we are not doing something "odd" or "apply[ing] the modifier … to only a portion of [a] cohesive preceding clause." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (applying a modifier to the entire series where it followed a "concise, integrated clause").

Second, and in line with the above textual interpretation, the Supreme Court has analyzed this statute in a different context and indicated that the dollar-amount modifier stands as a separate element. In *Carter v. United States*, 530 U.S. 255 (2000), the Court compared § 2113(a) and (b). In discussing the statute's intent requirements, the Court stated that "subsection (b) requires that the defendant act 'with intent to steal or purloin,'" with no mention of monetary constraints. *Id.* at

262. The Court also clarified that "the first paragraph of subsection (b) requires that the *property* have a 'value exceeding $1,000,'" with no indication that the specific intent applies to the valuation requirement. *Id.* (emphasis added). The Supreme Court had every opportunity in *Carter* to hinge the requisite intent on the statutory valuation requirement, but it did not do so. In fact, the Court in *Carter* did the opposite—it recognized the valuation requirement as its own element. *Id.* at 273. Following the Supreme Court's direction, we need not wade into the intricacies of the parties' linguistic arguments.

Third, the pattern jury instructions align with this interpretation. "Pattern instructions are presumed to accurately state the law." *United States v. Freed*, 921 F.3d 716, 721 (7th Cir. 2019). For bank theft, the pattern instructions include four necessary elements:

> 1. The defendant took and carried away [property; money; something of value] belonging to or in the [care; custody; control; management] of [name bank, credit union, or savings and loan named in the indictment]; and

> 2. At the time the defendant took and carried away such [property; money; something of value], the deposits of the [bank; credit union; savings and loan] were insured by the [Federal Deposit Insurance Corporation; Federal Savings and Loan Insurance Corporation; National Credit Union Administration]; and

> 3. The defendant took and carried away such [property; money; thing of value] with the intent to steal; and

4. Such [money; property; thing of value] exceeded $1,000 in value.

Pattern Criminal Jury Instructions of the Seventh Circuit
(2020) at 749. While the instructions are not dispositive, the
fact that their presentation of the elements aligns with this
Court's statutory interpretation and the Supreme Court's
guidance simply provides additional support.

Finally, Foy's proposed interpretation would lead to impractical and illogical results. Requiring the government to
prove beyond a reasonable doubt that a defendant specifically
intended to steal a certain amount of money or that a defendant knew how much money was in an ATM before robbing it
would be unworkable. *See Molzof v. United States*, 502 U.S. 301,
309 (1992) (rejecting proposed interpretation that "would be
difficult and impractical to apply"). Moreover, this Court will
not interpret § 2113(b) to absolve those who rob an ATM but
did not have a specific intent regarding the amount of money
they intended to steal. *See United States v. Nania*, 724 F.3d 824,
837 (7th Cir. 2013) (interpreting Guidelines in a way that
"avoids a potentially absurd result").

For these reasons, the district court did not err in concluding the government was only required to show that Foy and
his co-conspirators intended to steal money, not that they specifically intended to steal more than $1,000. Because we affirm
the district court's interpretation of the § 2113(b) mens rea requirements, we need not separately analyze intent under
§ 371. *See United States v. Feola*, 420 U.S. 671, 686 (1975) ("[T]o
sustain a judgment of conviction on a charge of conspiracy to
violate a federal statute, the Government must prove at least
the degree of criminal intent necessary for the substantive offense itself."); *United States v. Zarattini*, 552 F.2d 753, 760 (7th

Cir. 1977) ("The mental state required for a conspiracy conviction is no greater than that necessary to commit the underlying substantive offense.").

### B. Evidence of Agreement

Foy's second argument on appeal is that the government produced insufficient evidence to prove the existence of an agreement to commit felony bank theft beyond a reasonable doubt. "We review challenges to the sufficiency of the evidence in a bench trial under the same deferential standard that applies to a jury verdict: we reverse only if we conclude, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Medina*, 969 F.3d 819, 821 (7th Cir. 2020) (citations and internal quotation marks omitted). In doing so, we may not "reweigh evidence or reassess witness credibility and may uphold a conviction based on circumstantial evidence." *Id.* "A verdict will be overturned on appeal only if the record is devoid of evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *Freed*, 921 F.3d at 722 (citation and internal quotation marks omitted).

To sustain a conspiracy conviction under § 371, the government must prove the following elements beyond a reasonable doubt: "(1) an agreement to commit an offense against the United States; (2) an overt act in furtherance of the conspiracy; and (3) knowledge of the conspiratorial purpose." *United States v. Jones*, 993 F.3d 519, 531 (7th Cir. 2021) (citation omitted). The "essence of a conspiracy … is to join an agreement, not a group." *United States v. Curry*, 977 F.2d 1042, 1053 (7th Cir. 1992). "As we have often noted, '[a]n agreement need not be explicit; a tacit agreement may support a conspiracy

conviction.'" *United States v. Avila*, 557 F.3d 809, 815 (7th Cir. 2009) (alteration in original) (quoting *United States v. Handlin*, 366 F.3d 584, 589 (7th Cir. 2004)). Circumstantial evidence may be enough to prove an agreement—for example, evidence "aimed at showing that the co-conspirators embraced the criminal objective of the conspiracy, the conspiracy continued onward towards its common goal," and the relationship among the co-conspirators was a cooperative one. *Handlin*, 366 F.3d at 589. However, "[w]here the jury is left with two equally plausible inferences from the circumstantial evidence, guilty or not guilty, it must necessarily entertain a reasonable doubt." *United States v. Vizcarra-Millan*, 15 F.4th 473, 507 (7th Cir. 2021), *cert. denied sub nom. Grundy v. United States*, 142 S. Ct. 838 (2022).

On this issue, our review is a deferential one. The evidence at trial, specifically the surveillance video footage, clears the bar for sufficient evidence. Even without audio, the footage shows Foy, Harvey, Simpson, and others taking cooperative steps to reach the ATM's protected contents. The group shared tools, passing them back and forth, as various people took turns attempting to break open the ATM. The individuals also at times jointly exerted force and directed each other's actions. As such, regardless of whether they came to the ATM together or as strangers, they acted as a group, working cooperatively toward the common goal of stealing money from the ATM. Therefore, while there is no evidence of a spoken agreement, it is rational to conclude that the footage does not present two equally plausible inferences. Viewing the footage in the light most favorable to the government, a rational trier of fact could have found that it more plausibly demonstrates that Foy entered into a tacit agreement with his co-conspirators to rob the ATM.

We see no error in the district court's conclusion and thus affirm Foy's conviction for conspiracy to steal money from the Bank of America ATM.

### C. Sentencing

The third and final issue on appeal is whether the district court erred in relying on the contemporaneous protests in response to the killing of George Floyd as an aggravating factor in sentencing Foy. Defendants may challenge the sentencing procedure and the substantive reasonableness of the resulting sentence. *United States v. Figueroa*, 622 F.3d 739, 743 (7th Cir. 2010). Foy raises only a procedural objection—that the district court connected his offense to the widespread looting sparked by George Floyd's death without sufficient evidence to do so. In response, the government asserts that Foy waived any challenge to the district court's consideration of the civil unrest as procedural error.

The parties agree that Foy did not raise this objection below, but they disagree about whether the argument was waived or forfeited. The answer dictates our standard of review. "Waiver occurs when a party intentionally relinquishes a known right and forfeiture arises when a party inadvertently fails to raise an argument in the district court. We review forfeited arguments for plain error, whereas waiver extinguishes error and precludes appellate review." *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) (citation omitted).

Generally, "mere failure to make a particular objection on a specified ground during a sentencing hearing" constitutes forfeiture and "result[s] in plain error review on appeal." *United States v. Walton*, 255 F.3d 437, 442 (7th Cir. 2001). However, failing to make a particular objection may result in

waiver "when the defendant had a targeted sentencing strategy that led him to waive certain other sentencing arguments." *Flores*, 929 F.3d at 448. "Because the waiver principle is construed liberally in favor of the defendant, we are cautious about interpreting a defendant's behavior as intentional relinquishment." *United States v. Barnes*, 883 F.3d 955, 957 (7th Cir. 2018).

The government's initial sentencing memorandum argued that Foy's offense was sufficiently serious under 18 U.S.C. § 3553(a)(2)(A) because it contributed to the widespread looting that occurred following the killing of George Floyd. Specifically, the memorandum stated:

> The looting by defendant (and others) during the days following the death of George Floyd required the expenditure of a significant amount of public resources. Further, the looting caused reputational harm to the City of Chicago; undercut the message of peaceful protestors; and shook many Chicago residents' fundamental sense of security and faith in society. Defendant's offense is therefore very serious.

This information was also included in the government's version of the offense attached to the PSR.

In response to the PSR, Foy filed a sentencing memorandum arguing that the § 3553(a) factors warranted a low-Guidelines sentence. In doing so, he "acknowledge[d] [that] the conduct of which he was found guilty indirectly had an incalculable impact on the public." In a subsequent sentencing memorandum, Foy objected to the government's intended loss calculation and noted that his crime took place

"against a backdrop of looting and heavy civil unrest" in Chicago.

At the sentencing hearing, Foy made no additional objections to the PSR. The district court declined to apply the dangerous weapon enhancement, accepted a revised intended loss calculation agreed to by both parties, and otherwise adopted the PSR. Before announcing its sentence, the district court set out its sentencing rationale, discussing both mitigating and aggravating factors. The district court pointed to the fact that Foy's crime occurred "during the days following the death of George Floyd" as "one of the most important aggravating factors" in his case. The district court paraphrased the government's sentencing memorandum—noting that Foy's crime contributed to "the expenditure of [a] significant amount of public resources" and that the widespread "looting caused reputational harm to the City of Chicago, undercut the message of peaceful protesters, and shook many Chicago residents' fundamental sense of security and faith in society." In concluding that his conduct was "extremely aggravating," the district court noted that Foy and those alongside him "took advantage of a wounded city that was doing its best to both allow peaceful protests and keep people from going out and committing crimes." Foy now argues that "there was no actual record evidence tying the acts at issue to the protests," and therefore, the district court procedurally erred by making that connection based solely on the government's articulation of the offense.

"The lines between waiver and forfeiture are not always clear." *United States v. Robinson*, 964 F.3d 632, 640 (7th Cir. 2020). However, construing the record liberally in Foy's favor, no waiver occurred here. Although Foy's sentencing

memoranda referenced the looting taking place in Chicago at the time of his offense, he never "actively disclaimed the position[] he now raises"—that the record does not sufficiently demonstrate his offense was *connected to* the widespread looting to warrant its consideration as an aggravating factor. *United States v. Seal*, 813 F.3d 1038, 1045 (7th Cir. 2016) (holding defendant "forfeited, but did not waive" arguments concerning the court's application of sentencing enhancements, where his objections at sentencing "hinged on a single argument" but "he never actively disclaimed the positions he now raises").

Foy's two references to the widespread looting appear to have been made in response to arguments advanced by the government. In making those references, Foy did not expressly adopt the government's characterization of his offense or advocate its adoption. *Cf. Barnes*, 883 F.3d at 958 (concluding that defendant waived an objection to the inclusion of certain offenses in his criminal history calculation by "specifically and repeatedly t[elling] the district court that it was appropriate to assign him a criminal history point for each of the … offenses"). While it is challenging to ascertain the purpose—strategic or accidental—of Foy's failure to object when viewing a cold record, we conclude that he did not knowingly and intentionally waive his objection to the district court's reliance on the widespread looting that occurred in the aftermath of George Floyd's death as an aggravating factor.

So, we will review Foy's forfeited objection for plain error. Plain-error review involves four steps:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned,

> *i.e.*, affirmatively waived, by the appellant....
> Second, the legal error must be clear or obvious,
> rather than subject to reasonable dispute....
> Third, the error must have affected the appel-
> lant's substantial rights, which in the ordinary
> case means he must demonstrate that it affected
> the outcome of the district court proceedings....
> Fourth and finally, if the above three prongs are
> satisfied, the court of appeals has the *discretion*
> to remedy the error—discretion which ought to
> be exercised only if the error seriously affect[s]
> the fairness, integrity or public reputation of ju-
> dicial proceedings.

*Hyatt*, 28 F.4th at 782 (alterations in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). If all steps are satis-fied, "[r]emand for resentencing is appropriate on plain-er-ror" grounds. *United States v. Burgess*, 22 F.4th 680, 686 (7th Cir. 2022).

"Our task is to ensure that the district court committed no significant procedural error, such as incorrectly calculating the guidelines range, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence." *United States v. Salgado*, 917 F.3d 966, 969 (7th Cir. 2019) (citation and internal quotation marks omitted). A sentencing court is "en-titled to rely on the factual information contained in the PSR" when a defendant does not challenge the factual accuracy of the PSR in their sentencing memorandum. *United States v. Anaya*, 32 F.3d 308, 313 n.2 (7th Cir. 1994). The court "must adequately explain the chosen sentence," *Gall v. United States*, 552 U.S. 38, 50 (2007), but may not "venture[] too far from the

record" in doing so, *United States v. Smith*, 400 F. App'x 96, 99 (7th Cir. 2010). Furthermore, "it is inappropriate to blame [a defendant] for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct." *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016) (alteration in original) (citation omitted).

Foy argues on appeal that the court erred in linking Foy's conduct to the George Floyd protests "without any evidence in the record that showed that these two were in fact connected in any meaningful way." The PSR notes that Foy's "actions took place in the days following the death of George Floyd" and cites two newspaper articles in support of its assertions regarding the damage caused by the "widespread looting" occurring at the time. At trial, a CPD officer testified that on the day of Foy's offense, there was "rioting, looting, [and] destruction of property [occurring] throughout the entire city and the Seventh District of Chicago," where Foy's offense took place.

Considering this information, we conclude that the district court did not commit error, let alone a clear or obvious one, in finding that Foy's brazen act contributed to the widespread looting and property destruction taking place in Chicago at the time. Foy's conduct was more than "tangentially relate[d]" to the George Floyd protests, *Robinson*, 829 F.3d at 880 (citation omitted); as he himself argued to the district court, his attempt to rob an ATM in broad daylight took place "against a backdrop of looting and heavy civil unrest" in Chicago and "the conduct of which he was found guilty indirectly had an incalculable impact on the public." Thus, we do not see the district court's comments as "so far out of bounds" as to entitle Foy to resentencing. *Figueroa*, 622 F.3d at 744.

Instead, they were relevant to the offense and supported by the record. As such, we affirm Foy's sentence. *Cf. United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018) (affirming sentence and concluding district court did not commit procedural error by "merely situat[ing] [defendant's] offense against the backdrop of statistics and observations about widespread gun violence in Chicago").

### III.    Conclusion

For the reasons explained above, we AFFIRM Foy's conviction and sentence.