In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3099

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER R. WILLIAMS, JR.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:21-cr-10028-JES-JEH-1 — **James E. Shadid**, *Judge.*

———————————

ARGUED SEPTEMBER 21, 2023 — DECIDED OCTOBER 30, 2023

———————————

Before EASTERBROOK, ROVNER, and PRYOR, *Circuit Judges.*

ROVNER, *Circuit Judge.* Christopher Williams received a 360-month term of imprisonment for his role in a large-scale methamphetamine trafficking conspiracy, to which he pled guilty. Unhappy with that sentence, he appeals, arguing that the sentence was unreasonable, and that the judge erred in enhancing the sentence in light of aggravating factors.

In his sentencing hearing, the government portrayed Williams as a major supplier to both other dealers and individual users, asserting that he was responsible for the distribution of more than 48 kilograms (105 pounds) of methamphetamine over the course of the conspiracy. As is all too often the tragic result with methamphetamine distribution, some of the drugs Williams supplied caused fatalities. The government's investigation linked three such deaths back to methamphetamine supplied by Williams. Laboratory testing of different batches of drugs supplied by Williams and confiscated by law enforcement indicated that the tested drugs were between 96 to 100% pure methamphetamine.

Ten people who purchased significant quantities of methamphetamine from Williams (and were all implicated in the distribution of methamphetamine with Williams) testified at his sentencing hearing about the quantities of drugs they bought from him. Several of them also testified about threats he made to them to induce payment for fronted supply, and about his possession and use of firearms. The government had plenty of other evidence of his drug dealings: a driver and passenger arrested for methamphetamine possession disclosed Williams as their source. Another dealer in Peoria informed officers that he and Williams had distributed 276 grams of methamphetamine as part of their trafficking relationship. And officers orchestrated a controlled buy with audio and visual recording in which, after phone calls arranging the transaction with Williams, Williams' associate provided the source with approximately twenty grams of methamphetamine.

Williams pled guilty to four different counts involving distribution and possession of methamphetamine in violation

of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B). The district
court sentenced Williams to a sentence at the bottom of the
360 month to life range recommended by the United States
Sentencing Guideline—imposing a 360-month sentence for
each count, to be served concurrently.

A. *The reasonableness of the sentence*

In this appeal, Williams begins with what some consider
the Mt. Everest of sentencing arguments. Williams would like
us to conclude that his within-Guidelines sentence was unrea-
sonable. This goal is elusive both because of the deference ap-
pellate courts owe to district courts in sentencing generally,
and because of the presumption of reasonableness attached to
sentences recommended by the United States Sentencing
Commission.

As for deference, the district court has a front row view to
the facts of the crime, the demeanor and credibility of the wit-
nesses, the presentation of the pre-sentencing report, and the
assessment of the § 3553 factors. *See United States v. Vallar*, 635
F.3d 271, 279–80 (7th Cir. 2011) ("We recognize that the sen-
tencing judge is in the best position to apply the § 3553(a) fac-
tors to the individual defendant, and that the judge sees
things we cannot see, assesses in real-time the credibility of
witnesses and defendants when we cannot, and develops in-
sights from the various bits and pieces of information that he
comes across in the course of a case that nonetheless are not
reflected in the record."); *United States v. Daoud*, 989 F.3d 610,
611 (7th Cir. 2021) (Rovner, J., dissenting from the denial of
rehearing en banc) (describing factors that make it important
to defer to a district court's discretion in sentencing). For this
reason, the Supreme Court instructs appellate courts to limit
their review only to determinations of whether a sentence is

reasonable. *Gall v. United States*, 552 U.S. 38, 46 (2007). Consequently, we review the substantive reasonableness of a sentence for abuse of discretion only. *Id.*; *United States v. Griffith,* 913 F.3d 683, 689 (7th Cir. 2019). Although we review claims of procedural errors in sentencing de novo, these are generally limited to matters such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Williams claims that the court committed procedural error by failing to explain why he received a harsher sentence than any of the witnesses who testified against him and were implicated in the same distribution scheme. But as will become clear below, the court did not ignore the requirement of § 3553(a) to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The court considered the disparity issue and addressed it, giving several explanations for why Williams' sentence was higher than that of his co-conspirators. In short, there was no procedural error.

Consequently, all of Williams' arguments about the sentence and the disparities are really arguments about the reasonableness of his sentence, which, as we noted, we review only for an abuse of discretion. *United States v. Turnipseed*, 47 F.4th 608, 613 (7th Cir. 2022). Moreover, our deference is at its peak when the sentence, like the one given to Williams, is within the range suggested by the United States Sentencing Guidelines. "For even though the Guidelines are advisory

rather than mandatory, they are … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. The Guidelines themselves are designed to remove disparities, thus within-Guidelines sentences are presumed to be reasonable and are virtually unassailable. *Molina-Martinez*, 578 U.S. at 201; *United States v. Vallar*, 635 F.3d 271, 279 (7th Cir. 2011) (stating that within-Guidelines sentences "will almost never be unreasonable.") (*quoting United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008)); *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008).

Williams' reasonableness argument also focuses on the disparity between his sentence and those of the testifying co-conspirators. Six of the other testifying witnesses who were charged with federal crimes received between 151 and 300 months, depending on their criminal history, their role in the conspiracy, and the mitigating and aggravating circumstances. Two were charged only with state crimes. One cooperated with the government and no charges were ever filed, and one was awaiting sentencing at the time of briefing. The government pointed out that each of the witnesses who received a lesser sentence than Williams was subject to a lower advisory Guidelines range. The district court judge considered Williams' arguments about the disparity and addressed them head on, justifying the higher sentence on the rationale that Williams was a large-scale dealer who supplied other dealers and distributed methamphetamine to many people. The court reasoned that he exerted a high level of control over the transactions, and he threatened others to conform to his will. The district court judge also noted that Williams was not, himself, addicted to methamphetamine and was motived by

financial gain rather than addiction.[1] Finally the court noted that, although the district court was not sentencing Williams for the death of any of the victims who died after ingesting the methamphetamine he sold directly or indirectly to them, the district court judge nevertheless considered it as an aggravating factor under § 3553 because Williams dabbled in the distribution of drugs (much of which was tainted with deadly fentanyl) known to be exceptionally dangerous. A district court judge who reasonably and adequately explains why a disparity is warranted has not abused his discretion. *United States v. Patel*, 921 F.3d 663, 673–74 (7th Cir. 2019).

---

[1] At oral argument and in the reply brief, Williams' counsel argued that Williams was indeed a drug addict. The Presentence Investigation Report indicates that Williams, according to his own self report, used several drugs, including methamphetamine, during the time in which he was distributing drugs. The testifying witnesses who were asked during the sentencing hearing about Williams' drug use, however, stated that they did not know Williams to be a drug user. *See* Tr. 49-50, R. 49 at 49–50 (testimony of Ronnie Bodke); Tr. 69, R. 49 at 69 (testimony of Dustin Test); Tr. 103, R. 49 at 103 (testimony of William Zamaro); Tr. 233, R. 50 at 64 (testimony of Thomas Wright); Tr. 258, R. 50 at 89 (testimony of Mary Lazzari). And the prosecuting attorney argued at sentencing that Williams' statements about his own drug use were contradictory and unreliable, as they changed according to what was most beneficial to him at the time. Tr. 381-384, R. 50 at 212–15. The court was entitled to believe the witness testimony that Williams rarely if ever used methamphetamine, over his own report that he was an addict. But in any event, even if the district court erred by concluding, based on the evidence, that Williams was not addicted to methamphetamine, this error would not have affected the sentence, as Williams' interest in financial gain (as opposed to supporting an addiction), was only one small part of the district court's rationale for his sentence.

B. *The enhancements*

Williams' "Statement of Issues for Review" also asks "[w]hether the government met its burden to prove the enhancements without producing a firearm and only one piece of evidence?" Williams' Brief at 2. A district court must find facts sufficient to support an enhancement by a preponderance of the evidence—a finding that, once again, we review only for clear error. *United States v. Griffin*, 76 F.4th 724, 751 (7th Cir. 2023). That means we can reverse "only if a review of the evidence leaves us with the definite and firm conviction that a mistake has been made." *United States v. Sandidge*, 784 F.3d 1055, 1061 (7th Cir. 2015) (*quoting United States v. Johnson*, 765 F.3d 702, 708 (7th Cir. 2014)).

Although Williams' "Statement of Issues for Review" specifically references firearms, but not threats, in the argument section he discusses the threatening conduct with just a throwaway reference to firearms. The only statement in the argument section about firearms is as follows: "Most [witnesses] also stated that they never saw Mr. Williams with a weapon." Williams' Brief at 8. If this is indeed an argument about the firearms enhancement, it is wholly insufficient to preserve the issue for appeal. *Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) (*quoting Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Williams included additional information in the reply brief in which he argues that the threatening text message used to support the firearm enhancement happened outside of the timeframe of the conspiracy, but this argument comes too late, and likewise is not fully developed. Just as undeveloped arguments are waived, so are arguments

raised for the first time in reply briefs. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond.")

As for the enhancement for credible threats of violence under Sentencing Guideline § 2D1.1(b)(2), Williams argues that the enhancement for threats was unreasonable because only three of the ten witnesses testified that they had been threatened, only one of the threats was supported by physical evidence of the threat (in the form of a text message), and during one of the alleged threatening incidents, Williams did not have a weapon. The Guideline, however, says nothing about a particular number of threats, or the presence of a weapon. It merely states, "If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by 2 levels." U.S.S.G. § 2D1.1(b)(2).

The evidence of threats was overwhelming. One of Williams' buyers testified that Williams threatened to "shoot up" his home if he did not pay what he owed. A second buyer testified that Williams assaulted and threatened to kill him when he incurred a debt after Williams fronted him methamphetamine, and then later solicited someone to assault him while he was incarcerated. And one of the witnesses at sentencing confirmed that she drove Williams while he looked for that same buyer to settle his debt. A third witness testified that Williams brandished a handgun just prior to threatening another buyer about payment. The government also introduced texts sent from Williams to a fourth co-conspirator in which he stated that he would kill for money owed and expected money or blood. That final threat, evidenced both by witness testimony and the actual text messages themselves,

would have been more than sufficient to support the district court's enhancement for issuing threats. U.S.S.G. § 2D1.1(b)(2). We do not mean to imply, however, that the evidence of threatening behavior supported by witness testimony alone was insufficient. It is not uncommon for drug dealers who threaten their dealers and buyers not to leave behind a written trail of evidence of those threats. Evidence in criminal matters commonly comes from witness testimony without physical evidence. *See Villavicencio-Serna v. Jackson*, 999 F.3d 496, 503 (7th Cir. 2021) ("Not every case has the kind of physical evidence that definitively resolves doubts, but neither is that type of evidence required."). The district court has far-reaching discretion to listen to testimony and the subsequent cross-examination, assess demeanor, and then decide about the credibility of that testimony. *United States v. Pennington*, 908 F.3d 234, 240 (7th Cir. 2018) (*quoting United States v. Pulley,* 601 F.3d 660, 664 (7th Cir. 2010)) ("we defer to a district court's determination of witness credibility, which can virtually never be clear error."). Moreover, the district court need only find by a preponderance of the evidence that the threatening behavior occurred. *United States v. Galvan*, 44 F.4th 1008, 1012 (7th Cir. 2022). The district court judge acknowledged the potential self-interested motivations of many of the testifying witnesses, but nevertheless judged the testimony about the threats to be credible and thus applied the enhancement for threatening conduct. We have no firm conviction that an error has been made.

C. *Objections to the base offense level*

Finally, Williams argues that the Guideline range was not accurate because the government failed to provide enough information about the purity of the methamphetamine.

Williams, however, after a brief objection to the base offense level, withdrew that objection and stipulated to a base offense level of 38 under the Sentencing Guidelines, explicitly agreeing that it was accurate and not asserting any objection to the purity of the drugs. "When a defendant intentionally relinquishes a known right—for example, stating on the record that he has no objection to a specific aspect of the presentence report—he waives the right to appeal." *United States v. Robinson*, 964 F.3d 632, 639–40 (7th Cir. 2020).

Even had Williams not explicitly withdrawn his objection to the base offense level, when a court looks at the record and can see a strategic decision for forgoing an argument, it is a good indication that the defendant made a knowing and intelligent waiver and did not negligently fail to raise the argument. *United States v. Burns*, 843 F.3d 679, 686 (7th Cir. 2016). In this case, Williams made a successful strategic decision to stipulate to the base offense level of 38. That base offense level required only that Williams be held accountable for 4.5 kilograms or more of methamphetamine (actual). USSG § 2D1.1(c)(1). The evidence supported the government's conclusion that Williams was responsible for more than 48 kilograms of methamphetamine–almost ten times the amount the government needed to prove. Given these facts, any argument about purity was unlikely to lower the amount below 4.5 kilograms. Not only was it a losing argument, but to assert it, Williams would have to sacrifice any potential reduction for acceptance of responsibility. Williams' lawyer made full use of that stipulation to argue for a reduction based on acceptance of responsibility. *See* Tr. at 329; R. 50 at 160 ("Your Honor, I believe that the three-level reduction is warranted because my client has accepted responsibility. He admitted to the conspiracy. He admitted to selling to various individuals.

He even admitted, you know, to the offense level of 38.").
That stipulation reduced Williams' offense level by three.
Having made full and strategic use of the stipulation, Wil-
liams cannot now argue that the base offense level was incor-
rect.

Because we see neither error nor abuse of discretion, we
AFFIRM the sentencing decision of the district court in this
matter.