In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-2092

MINOCQUA BREWING COMPANY LLC and
KIRK BANGSTAD,

*Plaintiffs-Appellants*,

*v.*

DANIEL HESS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:25-cv-00325-jdp — **James D. Peterson**, *Chief Judge*.

ARGUED SEPTEMBER 22, 2025 — DECIDED NOVEMBER 26, 2025

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges*.

ROVNER, *Circuit Judge*. Kirk Bangstad and the Minocqua Brewing Company ("Brewery" and together "plaintiffs") allege that the individual supervisors of the Oneida County Planning and Development Committee ("Committee") denied the Brewery a permit to operate an outdoor beer garden

in retaliation for Bangstad's political speech.[1] The district court declined to enter a preliminary injunction in favor of the plaintiffs, finding that they were unlikely to succeed on the merits given their concession that they violated many permit conditions and could point to no evidence of pretext for the permit denial. We agree and affirm.

## I.

We review the district court's denial of the motion for a preliminary injunction for an abuse of discretion, viewing its legal conclusions de novo, and findings of fact for clear error. *Richwine v. Matuszak*, 148 F.4th 942, 952 (7th Cir. 2025). We note that both parties' briefs assert many facts for which the district court made no findings. Federal Rule of Civil Procedure 52(a)(2) requires the district court to make findings of fact and conclusions of law when granting or denying a preliminary judgment. Fed. R. Civ. P. 52(a)(2). The district court, however, was not required to make findings of fact that were not necessary for its decision. *See Immigr. & Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 25 (1976). In this case, the district court's fact-finding was quite limited because the court concluded that the plaintiffs' concessions doomed their claims.

Although the findings of fact in the decision from which the plaintiffs appeal in this matter are narrow, that opinion referred back to the plaintiffs' almost identical preliminary injunction motion filed a few weeks earlier, noting that the court need not consider the nearly identical evidence and argument that the court had previously rejected. *See* R. 32 at 2

---

[1] Those individual Committee persons are Daniel Hess, Mitchell Ives, Scott Holewinski, William Fried, and Robert Almekinder.

(referencing R. 23). The earlier order included more factual findings, including the following: the plaintiffs conceded that they failed to comply with several conditions of the issued permit; they operated the outdoor activities even after the Committee suspended the permit; when called to task by the Committee in June 2024, Bangstad would only commit to satisfying the permit conditions by October 2024; but by February 2025, the plaintiffs still had not satisfied all of the conditions of the permit. R. 23 at 3. The district court in the earlier order declined to consider some of the plaintiffs' evidence, including conclusory statements that no other businesses were subjected to the same permitting requirements—a statement for which the plaintiffs asserted no personal knowledge—and evidence of statements and conduct by government officials who had no decision-making authority over the permitting process. *Id.* at 3, 4.

For context, we have fleshed out the district court's facts with uncontested facts from the record, although of course we make no findings of fact, and note, in passing, that the district court's fact finding for purposes of the denial of the preliminary injunction is not controlling at a later hearing on the merits. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

Bangstad owns the Brewery—a microbrewery and pub that sells craft beer as well as some merchandise, including political merchandise. Because the town of Minocqua is a summer tourist destination, the Brewery, like many Minocqua businesses, operates only seasonally—from May through September. Thus, to maximize profits, it is important for tourist businesses like the Brewery to be up and running by summer. Bangstad is politically active and also a prolific

poster on social media who, according to his own assertion, commands a robust following. Beginning in 2020, Bangstad began to mobilize the Brewery, its products, and its social media platform to engage in political advocacy, beginning with a display of a "Biden Harris" sign at the Brewery, and then creating a "Progressive Beer" collection, with beers named after prominent politicians. In 2021, the Brewery moved to a different location and Bangstad announced on social media that his new tap room would become a gathering spot for discussions about local politics and progressive activism.

This appeal stems from the Brewery's November 2022 application for a conditional use permit to operate an outdoor beer garden, but the facts are best understood by starting with earlier background. In August 2021, the Brewery applied for a different permit—an administrative review permit—to open what it described as a craft brewery retail outlet at the site of the Brewery. In March 2022, the Oneida County Planning and Zoning Department granted the Brewery the requested administrative review permit, which allowed the operation of the Brewery's retail outlet but prohibited any associated outdoor operations, as those would have required a conditional use permit.[2] Despite the terms of the administrative review permit for indoor retail sales, the Brewery

---

[2] The briefs do not explain how various tasks are relegated among the Oneida County Planning and Zoning Department, the Oneida Country Planning and Zoning Committee, and the Board of Adjustment, but for our purposes it is not relevant. We found a description of duties of the Committee and Board of Adjustment in the Oneida County Zoning and Shoreland Protection Ordinance, Chapter 9, Article 8. Available at https://www.oneidacountywi.gov/wp-content/uploads/Chapter-9-Article-8-3.pdf, *archived at* https://perma.cc/WAN3-VEJA

operated some of its retail sales outdoors during the summer months of 2022.

In November 2022, the plaintiffs submitted an initial application for the permit at issue in this matter—a conditional use permit to add an outdoor beer garden. The application, which was not completed until February 24, 2023, proposed, among many other items, adding a driveway on land partially owned by the town of Minocqua. Because Minocqua officials refused the Brewery permission to use town land for a driveway, the Committee denied the conditional use permit for the outdoor beer garden on April 19, 2023. The Brewery chose not to appeal the denial to the Board of Adjustment (the appellate body) but instead submitted a revised conditional use permit application for the beer garden on May 10, 2023. In the meantime, the Brewery was violating its earlier-issued permit by operating its retail sales outlet outdoors during the 2023 summer season. Simultaneously, Bangstad continued to criticize town and County officials on social media and in public hearings. On August 2, 2023, the Committee met to consider the open and ongoing violations of the permit for the retail sales, and also to consider the plaintiffs' revised application for a conditional use permit for an outdoor beer garden. The Committee voted to revoke the administrative review permit for the retail sales portion of the business based on the Brewery's violations of the terms of that permit but tabled the discussion of the conditional use permit for the beer garden. The plaintiffs appealed the revocation of the retail permit to the Oneida County Board of Adjustment on August 9, 2023, but rather than also appealing the denial of the permit for the beer garden, they submitted three new alternate plans to the Committee.

Despite the previous permit violations, on October 6, 2023, the Department granted a conditional use permit for one of the three options proposed by the Brewery in its permit application for an outdoor beer garden, provided the Brewery met all of the conditions set forth in the permit application prior to the start of the outdoor operations. The Brewery opened the beer garden at the start of the 2024 summer tourist season but admits that it had not met all of the conditions required by the Committee. Consequently, the Committee held a public meeting on June 20, 2024, to consider suspending or revoking the conditional use permit for the beer garden. During that hearing, the Brewery's attorney conceded that the Brewery had failed to comply with some conditions of the permit, and informed the Committee that the plaintiffs could only commit to fulfilling all of the conditions by October, after the summer tourist season had ended.[3] The Committee voted to suspend the Brewery's permit for the outdoor beer garden for ninety days, reserving the option to lift the suspension sooner if the Brewery came into compliance with the conditions of the permit. The Brewery did not appeal to the Board of Adjustment and ignored the suspension, continuing to operate the beer garden throughout that summer. During this time, Bangstad once again took to social media to criticize County officials. On July 24, 2024, the Committee held

_____

[3] On April 12, 2024, the County filed suit in Oneida County Circuit Court seeking the imposition of forfeitures for violations of County ordinances. That litigation does not trigger any need to consider abstention doctrines as it involves only local ordinance compliance issues and no First Amendment retaliation claims. As far as we can tell, resolution of that suit will have no effect on the proceedings in this case. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292–93 (2005); *J.B. v. Woodard*, 997 F.3d 714, 722–23 (7th Cir. 2021).

another public hearing to address the Brewery's ongoing violations following the suspension of the permit. Counsel for the plaintiffs did not contest that the beer garden remained open after the suspension. Based on the past and ongoing violations of the conditional use permit and the defiance of the suspension, the Committee voted to revoke the permit in its entirety.

The plaintiffs appealed the revocation to the Board of Adjustment which voted to deny the appeal on February 20, 2025. As of that date, the Brewery has had neither an administrative review permit nor a conditional use permit for its retail outlet or outdoor beer garden. The Brewery submitted a new, and nearly identical, application for a conditional use permit for the beer garden on April 7, 2025, and on May 1, 2025, began operating the beer garden once again without a permit. On the very day that the Committee held a public hearing to consider the permit—June 11, 2025—Bangstad posted on social media that he would continue to operate without a permit regardless of the outcome of the hearing. And indeed, he concedes that the Brewery continued to operate the outdoor beer garden during the 2025 summer tourist season.

At the June 11, 2025 public hearing, the Committee voted to deny the Brewery's latest application for a new permit, citing the Brewery's repeated violations of the permit conditions, and its continued operation even after the Committee suspended the permits. During the Committee's deliberations, Committee member Scott Holewinski stated:

> So this isn't about parking spaces or fencing or traffic markings. That all can be handled in conditions of the CUP [conditional use permit].

This is about an applicant refusing to follow specific conditions in the past and violating every permit he had for the past three plus years. In fact, he is currently violating a known permit right now. And this morning he, Mr. Bangstad put on social media that no matter what happens today, he will be open anyway. So it just shows that he doesn't follow the rules. He doesn't.

(R. 29, ¶ 26).

Bangstad and the Brewery filed this suit in April 2025, asserting that the individual defendants, who are all supervisors on the Committee, retaliated against them for political speech protected by the First Amendment by revoking the outdoor beer garden permit that the Committee issued on October 6, 2023, and denying the new permit application that the plaintiffs submitted on April 7, 2025. In its motion for a preliminary injunction, the plaintiffs asked the court to order the defendants to reinstate the permit for the outdoor beer garden and prohibit the defendants from further interfering with or retaliating against them for protected First Amendment activity. As we noted at the start, the plaintiffs' brief also makes factual allegations that have not been determined by the district court—for example, that they were granted only one parking space waiver while other similar businesses were granted far more; that in 2022, the County purposely delayed meeting on Bangstad's permit application until just before the busy summer tourist season; and that a non-defendant town president expressed concern about Bangstad's political signs. As will become clear below, those factual allegations are not necessary to a determination in this case.

**II.**

Because we are presented with an appeal from a denial of a preliminary injunction in a First Amendment retaliation case, we must layer one multi-layer "test" for a grant of a preliminary injunction upon another—the three elements the plaintiff must demonstrate to prevail on a claim of First Amendment retaliation.

A plaintiff seeking a preliminary injunction must establish a likelihood of success on the merits, a likelihood of suffering irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that an injunction is in the public interest. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). Of all of these factors, the likelihood of success on the merits ordinarily carries the most weight. *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023).

The plaintiffs' likelihood of succeeding on the merits, in turn, depends on their prospects of successfully meeting the elements of a First Amendment retaliation claim. To do so, the plaintiffs must demonstrate (1) that they engaged in protected First Amendment activity, (2) that they suffered a deprivation because of that activity, and (3) causation—that is, that the First Amendment activity was at least a motivating factor in the Committee's decision to take the retaliatory action. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). Unquestionably Bangstad engaged in protected political speech by posting political signs and criticizing the government officials who denied his permit. And there is also no doubt that the plaintiffs allege a deprivation that resulted from that speech— that they were denied the permits they needed to operate the outdoor beer garden. The plaintiffs have therefore satisfied

the first two elements of a First Amendment retaliation claim. *See Id*. The only question that remains, therefore, is causation—that is, whether the First Amendment activity was a substantial or motivating factor in the Committee members' decision to deny the plaintiffs a permit. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). At this step a plaintiff need not demonstrate but-for causation, only that the protected activity was a motivating or substantial factor in the defendant's conduct. *FKFJ, Inc.*, 11 F.4th at 586. Plaintiffs can establish causation in this context in the same manner they might in other contexts—through direct or circumstantial evidence, the latter of which might involve suspicious timing, disparate treatment of similarly situated entities, ambiguous statements and the like. *FKFJ, Inc.*, 11 F.4th at 586; *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012).

If the plaintiffs make this threshold showing, the burden then shifts to the defendants to produce evidence that they would have denied the permits even in the absence of Bangstad's protected speech—that is, they must produce evidence that counters the plaintiffs' claims, that but for their speech, they would have received the permit. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 204 (2024) (*citing Lozman v. Riviera Beach*, 585 U.S. 87, 96 (2018)) (noting that even if retaliation is a motivating factor in the government's action there is still no liability unless the First Amendment violation is the but for cause of the adverse action); *see also Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). And if the Committee members carry that burden, the plaintiffs must demonstrate that the Committee's proffered reasons for denying the permit were pretextual and that retaliatory animus was the actual motivation for the permit denial. *Id.* The plaintiffs argue that the district court applied an improper causation requirement,

but we see no evidence that the district court did anything other than follow the burden-shifting process outlined in *Mt. Healthy*. Even if the district court or this court concluded that Bangstad's speech motivated, in part, the Committee's actions, this would not have amounted to a win for the plaintiffs (and thus no conclusion need be reached on this matter). It merely shifts the burden to the defendants who easily bore that burden of demonstrating that the adverse action—the denial of the permits—would have occurred even in the absence of the protected speech and that it was not pretext for discrimination.

The plaintiffs concede that they began violating the conditional use permit as soon as the Brewery opened for operations in the spring tourist season in 2024 and continued to do so throughout the tourist season in 2025. In fact, Bangstad declared publicly on social media the same day of the Committee hearing that the Brewery would stay open regardless of whether the Committee granted its permit—in essence avowing to continue violating the ordinance and permitting requirements in the future. The Brewery offered no evidence that other similarly situated businesses were allowed to continue operations despite past permit violations and such promises of future violations. [4] The plaintiffs argue that the requirements of the conditional use permit were unduly restrictive or selective, but the evidence below demonstrated

---

[4] The plaintiffs in their brief argue that the County denied the Brewery parking space waivers while other businesses were granted those waivers. But they provide no information as to what the criteria are for receiving a parking space waiver and whether the Brewery met them, whether the other businesses were similarly situated, or whether the defendants were responsible for granting those waivers.

that the conditions largely matched the details of the proposal set forth in the Brewery's own permit application, and that the plaintiffs did not challenge those conditions at the time of the permit application. The plaintiffs did not present evidence of other similarly situated businesses that were issued permits without similar conditions.

The Brewery filed this latest motion for a preliminary injunction based largely on the "new evidence" of Committee Chair Scott Holewinski's statement at the hearing in June 2024, described above. But as the district court noted, his statement said nothing about Bangstad's First Amendment-protected speech criticizing local officials. Instead he focused on Bangstad's "refus[al] to follow specific conditions in the past and violating every permit he had for the past three plus years," as well as his then-current violations, and his vow to violate the permitting requirements in the future. *See* R. 29 at ¶26.

Given the concession of past and present willful violations of the permitting requirements, and a promise for future violations— the district court did not abuse its discretion by concluding that the plaintiffs failed to demonstrate a likelihood of success on the merits. Any reasonable permit-issuing body would revoke or deny permits under those circumstances. There can be no First Amendment retaliation if the adverse action would have occurred even in the absence of the protected speech. *Massey*, 457 F.3d at 717.

Because the Brewery has shown no likelihood of success on the merits, we can affirm the denial of the motion for preliminary injunction without further discussion of the balancing of harms and irreparability. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 830 (7th Cir. 2002) (noting that

because the plaintiff showed no likelihood of success on the merits the court had "reason enough to deny the motion for preliminary injunction without further discussion."). Even were we inclined to continue with the remainder of the balancing test, the Brewery has waived these arguments by not raising them until the reply brief. *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1046 (2024).

### III.

For these reasons we AFFIRM the district court's denial of the motion for a preliminary injunction.